UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| RICARDO VIERA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Nos. 2:19-CV-167 |
| | ) 2:17-CR-073 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Before the Court is Ricardo Viera's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 77].[1] The United States has responded in opposition [Doc. 6]; and Petitioner has replied [Doc. 7]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 77] will be **DENIED**.

### I.   BACKGROUND

In August 2017, Petitioner and one co-defendant were charged in a twenty-three-count indictment pertaining to a conspiracy to commit wire fraud and aggravated identity theft, and the commission of the same. [Crim. Doc. 8]. Petitioner was named in all twenty-three counts. *See id.*

---

[1] Document numbers not otherwise specified refer to the civil docket.

On May 7, 2018, Petitioner entered into a plea agreement with the government. [Crim. Doc. 46]. Petitioner agreed to plead guilty to one count of Conspiracy to Commit Wire Fraud and Aggravated Identity Theft, one count of Wire Fraud, and one count of Aggravated Identity Theft. *See id*. The plea agreement was signed by Petitioner and attorney Robert R. Kurtz.

In his plea agreement, Petitioner acknowledged that he and his co-defendant "used access devices that had been unlawfully re-encoded with at least 122 other stolen credit/debit account numbers" in addition to eleven stolen accounts listed previously in the plea agreement, bringing the total number of used access devices to 133. [*Id*. pp. 7-8]. Petitioner further agreed that the total amount Petitioner and co-defendant attempted to obtain in furtherance of the conspiracy was "more than $40,000, but not more than $95,000." [*Id*. p. 11].

The Court conducted a change of plea hearing on May 24, 2018. Although there is no transcript of that hearing in the record, the Court recalls conducting its standard colloquy with Petitioner and finding him competent to enter a guilty plea.[2] The Court confirmed that Petitioner indeed wished to plead guilty. The Court also confirmed: that Petitioner had been afforded ample time to discuss the case with his attorney; that he believed that his attorney is fully aware of all the facts on which the charges were based; that counsel had explained the meaning of any words Petitioner might not have understood; that counsel had explained

---

[2] Where, as here, the same judge considering the § 2255 motion also presided over the underlying proceedings, the judge may rely on his recollections of those proceedings. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

2

the terms of Petitioner's plea agreement to hm; and that Petitioner understood that his sentence would be determined *by the Court*.

The presentence investigation report ("PSR") calculated a total offense level of 14 and criminal history category of II, resulting in a guideline range of 18 to 24 months, with an effective guideline range of 42 to 48 months since a term of imprisonment for Count 13 must be imposed consecutively to any other counts. [Crim. Doc. 55, ¶ 78]. The PSR also noted that, but for Petitioner's plea agreement, he would have been subject to a two-level increase in his offense level which would have raised his effective guideline range by six months. [*Id.*, ¶ 81].

The government filed a notice of no objections to the PSR but stated that it agreed with Petitioner's objection. [Crim. Doc. 62]. The government filed a sentencing memorandum requesting Petitioner be sentenced within the revised guideline range of 39 to 45 months, based on the terms of the Plea Agreement. [Crim. Doc. 63, p. 2].

Petitioner, through his counsel, Robert R. Kurtz, objected to the PSR's assessment of two criminal history points based on prior cases in Ohio and Nebraska found in Paragraphs 59 and 60 of the PSR. [Crim. Doc. 58, p. 1]. Petitioner contended that the parties negotiated this specific issue prior to entering into the Plea Agreement and explicitly incorporated the result into the Plea Agreement. [*Id.*, pp. 1-2]. The Probation Officer filed an Addendum to the PSR, noting that while she believed that criminal history points were appropriately assigned in the PSR, should the Court agree with the parties that the criminal history points should be removed, the effective sentencing guideline range would be 39 to 45 months. [Crim. Doc. 66]. Petitioner, through counsel, also filed a sentencing

memorandum, requesting a variance from the advisory guideline range for a total effective sentence of 36 months and 1 day. [Crim. Doc. 64, p. 1]. This recommendation took into account the revised guideline range due to the proposed removal of the criminal history points per the Plea Agreement [*Id.*].

On September 11, 2018, the Court sentenced Petitioner to a total of 40 months' imprisonment, with such term of imprisonment to run concurrently with Sullivan County, Tennessee, General Sessions Court Docket Number 2017-RK-49262. [Crim. Doc. 69, p. 2]. Petitioner did not file a direct appeal, but on September 25, 2019, he filed this timely § 2255 motion.

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See*

*Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). In order to obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d

at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. ANALYSIS

As an initial matter, Petitioner raises only one claim in this § 2255 motion which involves ineffective assistance of counsel relating to the specific finding of damage calculations in the Plea Agreement, resulting in a 6-point enhancement for damages ranging from $45,000 to $90,000. [Doc. 1, p. 4].

Petitioner asserts that his counsel was ineffective and prejudicial when counsel failed to argue the PSR and accepted that Petitioner "made a specific finding as to the amount of damages." [Doc. 2, p. 3]. Petitioner further contends that his counsel should have argued that loss should be calculated based on the amount of the cards Petitioner used, and not the amount they could have used. [*Id.*]. The government responds that as Petitioner and co-defendant used more than 130 cards they had unlawfully re-encoded, counsel had no legitimate basis to make the arguments that Petitioner claims should have been raised. [Doc. 6, p. 4]. The government further asserts that "the Sentencing Guidelines provide that loss is the greater of [sic] actual or intended loss" and that a sentencing court need only make a reasonable estimate of loss which should not be less than $500 per access device in cases involving unauthorized access device[s]. [*Id.*]. Petitioner replies, asserting that while he and his co-defendant had more than 130 devices in their possession, as they did not use all of them, the loss should have been calculated as "not less than $100 per unused means." [Doc. 7, p. 2]. He also asserts that as his attorney knew Petitioner had not used all

6

of the cards in his possession, he should have argued against the formula the government used in assessing damages. [*Id*.].

Petitioner's claim accuses his attorney of providing ineffective assistance at the plea stage. [Docs. 1, 2]. "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). As noted, in the guilty-plea context, the Supreme Court employs the same two-part standard for ineffectiveness that was developed in *Strickland*. *See Hill*, 474 U.S. at 58-59. That is, a petitioner must demonstrate that (1) his attorney's performance was outside the range of competence demanded of attorneys in the criminal context, and (2) the professionally unreasonable performance prejudiced him. To show prejudice in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

According to Petitioner, his counsel was ineffective in failing to object to the damages calculation set forth in the Plea Agreement. Petitioner asserts that counsel should have argued that as Petitioner did not use all 133 cards in his possession, the calculation of damages should have been less, placing Petitioner in a lower sentencing guideline range. [Doc. 2].

This claim fails at *Strickland's* second step. Petitioner "cannot satisfy the prejudice prong in the absence of any statement that he is actually innocent, or would have gone to trial if his attorney's performance had been different." *Hunter v. United States*, 160 F.3d

7

1109, 1115 (6th Cir. 1998). Petitioner makes neither claim. He does not allege he is innocent, nor does he claim that he would have decided to proceed to trial but for counsel's allegedly deficient performance. Petitioner only claims that his attorney's failure to object to the calculation of damages caused him to be placed in a higher guideline range for sentencing. [Doc. 2].

Petitioner may believe that his counsel was constitutionally ineffective because he now thinks he could have secured a better deal if only his attorney had been a better negotiator. However, the law is well-settled that dissatisfaction with a plea deal does not rise to a showing of constitutionally ineffective counsel. *See,* e.g., *Hunter*, 160 F.3d at 1115 ("[W]hile [petitioner] may later have decided that he could have done better, his dissatisfaction does not rise to a showing of constitutionally ineffective counsel"); *United States v. Parker*, 609 F.3d 891, 895 (7th Cir. 2010) ("[W]hether a petitioner 'could have negotiated a better plea deal is irrelevant in the ineffective assistance context.'") (quoting *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006)).

Additionally, a criminal defendant has "no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The government was therefore under no obligation to offer an even more lenient plea. Even if Petitioner's attorney would have objected to the calculation of damages in the Plea Agreement, Petitioner has not shown that the result would have been different. As discussed, Petitioner affirmed at the change of plea hearing that he wished to plead guilty, and that his attorney had adequately covered the plea agreement with him. The Plea Agreement clearly states that Petitioner and co-defendant "successfully *used* access devices" (emphasis added) and goes on to list with

8

specificity the locations and dates each access device was used. [Crim. Doc. 46, pp.5-10]. Petitioner also confirmed his understanding that his sentence would be determined *by the Court* after the Court had reviewed and considered the PSR. As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner's unsupported allegations are directly contradicted by the record and are not credited. Petitioner thus cannot bear his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

To the extent that Petitioner is asserting that his counsel was ineffective in failing to raise this issue at sentencing, Petitioner has not shown that he was prejudiced by this failure. Furthermore, Petitioner has not shown that his counsel was ineffective in failing to file an appeal raising this issue, as Petitioner has not alleged that he asked counsel to file an appeal or would have filed an appeal absent counsel's mis-advice. Accordingly, Petitioner has not shown that counsel was ineffective.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 77] will be **DENIED** and **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated

9

Case 2:19-cv-00167-RLJ Document 9 Filed 08/27/20 Page 9 of 10 PageID #: 45

a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claim under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

    **IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge